## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN JOSEPH O'DONNELL,  :
                         :    1:16-cv-0006
          Plaintiff,     :
                         :    Hon. John E. Jones III
     v.                  :
                         :
CUMBERLAND COUNTY, *et al.* :
                         :
          Defendants.    :

## MEMORANDUM & ORDER

### July 18, 2016

In his Complaint (Doc. 1), Plaintiff Shawn Joseph O'Donnell ("Plaintiff") asserts a Fourth Amendment claim to be free from unreasonable searches and seizures, as well as a Fourteenth Amendment due process claim and a supervisory and municipal liability claim, all pursuant to 42 U.S.C. § 1983, and pendant state constitutional claims.  (Doc. 1).  This action is brought against Cumberland County, Cumberland County Adult Probation and Parole Department, Officers Darby Christlieb and Karen Rhinehart, and several unknown officers of Cumberland County and the Cumberland County Adult Probation and Parole Department.  Also named as Defendants in this matter are the Cumberland County Prison, Officer Earl F. Reitz, Jr., and unknown officers of the Cumberland County Prison.  Collectively, these Defendants shall be known as the "Cumberland County

1

Defendants."  Further Defendants include the West Shore Regional Police Department, Officer Timothy Rine, and unknown officers of the West Shore Regional Police Department (collectively, the "West Shore Defendants").

Presently pending before the Court are two Motions to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, one filed by the collective Cumberland County Defendants (Doc. 15) and one filed by the collective West Shore Defendants (Doc. 18).

For the reasons that follow, the Cumberland County Defendants' Motion shall be denied in full.  The West Shore Defendants' Motion will be denied with respect to Plaintiff's claims alleging Fourth Amendment violations.  The West Shore Defendants' Motion will be granted with respect to Plaintiff's Fourteenth Amendment claims.

## I.     FACTUAL BACKGROUND

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Plaintiff's Complaint and viewed in the light most favorable to Plaintiff.

In the early hours of the afternoon on August 17, 2015, officers from the West Shore Regional Police Department, including Officer Timothy Rine, arrived at Plaintiff's place of employment.  (Doc. 1, ¶¶ 10-11).  Plaintiff was at that time employed as a cashier at Karns Quality Foods, located at 1023 State Street,

Lemoyne, PA 17043.  (*Id.*).  Meanwhile, Plaintiff's probation officer, Officer Karen Rhinehart, waited nearby in the parking lot outside of the store.  (*Id.*, ¶ 11). Upon arrival, the officers forcibly detained Plaintiff and removed him from the store, to the outside parking lot while his employer and store customers looked on. (*Id.*, ¶ 11).

Once outside, Officer Rhinehart informed Plaintiff that she "knew for a fact" that he had forged a note from a physician in order to obtain prescription medication.  (*Id.*, ¶ 12).  Officer Rhinehart told Plaintiff that she had obtained this information due to a call from an "anonymous" tipster.  (*Id.*).  Officer Rine told Plaintiff that while he had "no idea" about the facts surrounding the anonymous tip or the reason for Plaintiff's detention, he was "just following the orders" of Officer Rhinehart to detain Plaintiff.  (*Id.*, ¶ 14).  Meanwhile, Plaintiff repeatedly denied Officer Rhinehart's allegations and explained that he had a legitimate prescription for Suboxone.  (*Id.*, ¶ 13).

The officers placed Plaintiff in handcuffs and asked to search his car.  (*Id.*, ¶ 15).  Though Plaintiff denied their request, the officers proceeded to search Plaintiff's car, and then transported Plaintiff to Cumberland County Prison, where he was placed in a holding cell.  (*Id.*, ¶¶ 15-16).  Though Plaintiff repeatedly asked why he was being incarcerated, he was only told that he was there due to a "parole

violation." (*Id.*, ¶ 16). Plaintiff was not, however, on parole and was in fact under probation supervision. (*Id.*, ¶12).

At some point, Officer Rhinehart and another prison employee removed Plaintiff from his cell and told him that he was required to submit to a urine test, to which Plaintiff complied. (*Id.*, ¶ 17). Officer Rhinehart and the other employee asked Plaintiff to admit to illegal drug use, or threatened to ensure that his prison sentence would be "maxed out" when the urine test came back positive. (*Id.*). As of the date the Complaint in this matter was filed, Plaintiff had not received the results of that urine drug test. (*Id.*).

Plaintiff alleges that he remained incarcerated for an additional twenty-eight (28) days without being informed of his right to a hearing to establish whether probable cause existed for his arrest (a Gagnon I hearing). A Gagnon I hearing was never conducted during the course of Plaintiff's incarceration, nor was a parole detainer filed on the relevant docket. (*Id.*, ¶ 18). However, approximately three weeks into Plaintiff's detention, Officer Rhinehart demanded that Plaintiff sign a waiver of his right to a Gagnon I hearing, and indicated that if he would sign the waiver, she would take steps to have him transferred out of prison. (*Id.*, ¶ 19). However, Plaintiff refused to sign the document. (*Id.*). Plaintiff was released approximately one week later, on September 17, 2015. (*Id.*, ¶ 20).

Following this encounter, Plaintiff was again incarcerated for an alleged probation violation.  (*Id.*, ¶ 21).  During his second period of incarceration, Plaintiff waited approximately ten days for a Gagnon I hearing to be scheduled.  (*Id.*).  Once the hearing commenced, Plaintiff indicated that he wished to have an attorney present, and so the hearing was postponed until October 20, 2015.  (*Id.*, ¶¶ 21-22).  When the October 20th hearing commenced, Plaintiff and his attorney were informed that the hearing would constitute a Gagnon II hearing instead of the Gagnon I hearing they had anticipated.  (*Id.*).  Plaintiff alleges that they had not been informed of this change prior to the hearing, and so were unable to appropriately prepare, or produce witnesses and other evidence relevant to the Gagnon II hearing.  (*Id.*).

Also at the Gagnon II hearing, Officer Rhinehart stated under oath that she had placed a detainer on Plaintiff in regards to the twenty-eight day period that he was detained in August (discussed above).  (*Id.*, ¶ 22).  However, Plaintiff alleges that no detainer exists on the relevant docket.  (*Id.*).  Further, during the same hearing, Plaintiff was made eligible for a work release program.  (*Id.*, ¶ 23).  Yet Cumberland County Prison has denied Plaintiff access to the program due to "the possibility of further police action" in his case.  (*Id.*).  No further charges or allegations have been lodged against Plaintiff, however, and Plaintiff lacks information regarding the rationale for this stated "possibility."  (*Id.*).

Plaintiff alleges that the above-described actions and omissions were undertaken knowingly, intentionally, or recklessly, and with malice and deliberate disregard for Plaintiff's rights.  (*Id.*, ¶¶ 24, 28, 36, 41).  Furthermore, Plaintiff alleges that the practices detailed are and were consistent with the institutional practices of the County, the Parole Department, the Police Department, and the Prison.  (*Id.*, ¶ 29).  Despite knowledge of these practices, these entities have, according to Plaintiff, failed to take effective action to prevent their occurrence. (*Id.*, ¶ 30).  The County, Parole Department, Police Department, and the Prison further failed to properly train their employees, including through failure to instruct them in applicable provisions of law and the proper use of their authority to arrest and incarcerate individuals.  (*Id.*, ¶ 31-32).

Plaintiff alleges that, following the above-described events, he has experienced pain and suffering, humiliation, emotional distress, incurred expenses, and was otherwise damaged.  (*Id.*, ¶ 33).

## II.    PROCEDURAL HISTORY

As noted above, Plaintiff filed a Complaint in this matter on January 4, 2016, stating claims under 42 U.S.C. § 1983 for unreasonable search and seizure and denial of due process in violation of his Fourth and Fourteenth Amendment rights, as well as related state constitutional claims.

On March 1, 2016, Defendants Cumberland County, (the "County"), Cumberland County Adult Probation and Parole Department, and Officers Christlieb and Rhinehart filed a Motion to Dismiss Plaintiff's Complaint.  (Doc. 15).  An amended brief in support (Doc. 19) and opposing brief (Doc. 22) were filed on March 8th and March 21st, respectively.  Though Defendants have not filed a reply brief, the briefing period has now concluded and those filings submitted are comprehensive.  As such, Defendants' Motion is ripe for review.

The remaining Defendants filed their Motion to Dismiss on March 7, 2016. (Doc. 18).  This Motion has now been fully briefed (Docs. 21, 27 and 28) and is thus also ripe for review.  We consider the Motions together below.

## III.   STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to

judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679.  Next, the district court must identify "the 'nub' of the … complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.*  Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief.  *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57).  Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.   DISCUSSION

In their Motions to Dismiss, Defendants raise several arguments as to why the Court should dismiss portions of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Cumberland County Defendants argue that: (1) Plaintiff did not plead sufficient facts to sustain the municipal liability claims

against Cumberland County, Cumberland County Prison, and the Cumberland

County Adult Probation and Parole Department; and (2) that, because there is no

private cause of action for damages under the Pennsylvania Constitution, the state

constitutional claims must be dismissed.  The Cumberland County Defendants also

argue that:

> Plaintiff has not alleged sufficient facts that establish a valid constitutional violation against any employee or agent of these defendants and thus, the first and seminal element of his derivative claim—a constitutional violation—cannot be met.  Since plaintiff [sic] has failed to state an underlying constitutional violation against any employee, there is no basis for imposing liability under 42 U.S. § 1983 [sic] against the entity itself.

(Doc. 19, pp. 7-8).

These two sentences, containing multiple typographical errors, comprise the

entirety of the Cumberland County Defendants' argument challenging the

existence of constitutional violations in the Complaint.  As described above,

Plaintiff alleges a variety of Fourth and Fourteenth Amendment violations.

Without further details, such amorphous and overbroad arguments as those

provided by Defendants here are not even remotely sufficient to allow the Court to

analyze Plaintiff's claims under 12(b)(6).  Defendants fail to attack each alleged

violation with a single specified argument that would allow the Court to identify

the weaknesses in Plaintiff's claims as Defendants perceive them.  It would further

be a wasteful application of judicial resources for this Court to attempt to speculate

as to Defendants' exact meanings and intentions.  Certainly, these few brief

sentences are far too vague to allow us to conclude that Plaintiff has failed to state

a claim for which relief can be granted. Thus, we shall not grant Defendants'

Motion on the grounds that no constitutional violation has occurred, though

Defendants are free to revisit these arguments with greater specificity on summary

judgment.

We turn now to the remainder of the Cumberland County Defendants'

arguments. Defendants cite *Jones v. Philadelphia*, 890 A.2d 1188, 1216 (Pa.

Cmmw.Ct. 2006) for the premise that the Pennsylvania Constitution does not

support a private cause of action for monetary damages. Indeed, at least insofar as

we have had the opportunity interpret the relief afforded by Article 1 § 8, this

Court and other district courts within the Third Circuit have concurred with

Defendants and held that no private cause of action for money damages exists

under that clause. *See Fetters et al v. Mearkle et al*, No. 1:15-cv-1935 (M.D.Pa.

Jan. 11, 2016) (Jones, J.); *Hall v. Raech*, No. 08-5020, 2009 WL 811503, at *6

(E.D. Pa. March 25, 2009) ("Since *Jones*, federal courts addressing this issue with

respect to § 8 have followed *Jones* and held that no private cause of action exists. I

too find *Jones* persuasive and will adopt it accordingly."). However, *Jones* does

not preclude Plaintiff from requesting other remedies. *See Jones*, 890 A.2d at 1216

(noting that "other remedies, such as declaratory or prospective relief" are

available for an alleged violation of Article I, Section 8). Indeed, in the instant

case, Plaintiff requests "that this Court . . . [i]ssue declaratory and injunctive relief." (Doc. 1, p. 13).  Plaintiff also requests that the Court "award such other relief as is deemed just and proper," (*id*.) which we interpret to include a request for nominal damages, also available under the Pennsylvania Constitution.  "While such remedies might not provide [the plaintiff with] 'complete relief,' they are, nonetheless, remedies under the Pennsylvania Constitution." *Jones*, 890 A.2d at 1216.  Because such remedies remain available to Plaintiff, we shall not dismiss the state constitutional claims.

We next consider Cumberland County Defendants' arguments regarding Plaintiff's supervisory liability claims.  Defendants seek dismissal of the claims on the basis that Plaintiff failed to allege sufficient facts, pled with particularity, to survive a Motion to Dismiss.  Plaintiff however asserts that he has pled sufficient facts to support his claims that the Cumberland County Defendants failed to train their officers, and that the municipality failed to intervene to prevent ongoing constitutional rights violations, of which Defendants had knowledge.  For the following reasons, we agree with Plaintiff.

Plaintiff has stated that "it was the police and practice of the County, the Police Department the Parole Department, and the Prison to authorize certain officers, included defendants Rine, Christlieb, Rhinehart and Reitz, to deprive, and cover up the deprivation of, probationers' right to be free from unreasonable

searches and seizures, to be secure in their persons and property, and to due process of law . . . ." (Doc. 1, ¶ 28). Alone, this statement would constitute no more than a bare recitation of the standard for a municipal liability claim. However, Plaintiff also alleges that this practice developed specifically through Cumberland County's failure to train its employees in the proper use of their authority to arrest and incarcerate individuals, such as Plaintiff. Ultimately, Plaintiff alleges that this failure caused the constitutional violations he suffered.

We turn now to the standard articulated for a § 1983 supervisory liability claim. Commonly known as a *Monell* claim, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury . . . the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Thus, "in order for a government entity . . . to be liable under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation." *A.M. ex rel. R.M.K. v. Luzerne Cty. Juvenile Detention Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). "A course of conduct is considered to be a custom when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). Policy or custom causation may be established by "demonstrat[ing] that the municipal action was

taken with 'deliberate indifference' as to its known or obvious consequences."
*A.M.*, 372 F.3d at 580 (quoting *Bd. Of Count Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997)).  Municipal liability can also be predicated upon a failure to train employees, where "the failure to train amounts to 'deliberate indifference to the constitutional rights of persons with whom the police come in contact.'"  *Hall*, 2009 WL 811503, at \*5 (quoting *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (internal citations and quotations omitted)).

A demonstration of a municipality's failure to train must meet the standards set forth in a Motion to Dismiss.  As noted above, Federal Rule of Civil Procedure 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief that rises above the speculative level."  *Phillips*, 515 F.3d at 231.  Defendants argue that Plaintiff has not met this standard.  However, given the requirement that we view the facts of the Complaint in the light most favorable to Plaintiff, at this early stage of the proceedings and in an abundance of caution, we disagree with Defendants and shall not dismiss Plaintiff's claims.

As noted above, Plaintiff's "custom and practice" *Monell* claim rests on allegations that the Defendants failed to train their employees.  In order to succeed, Plaintiff "must show that the need for the county to provide specific training in order to avoid a constitutional injury was 'highly predicable' or 'patently

obvious.'"  *Kane v. Chester County Dept. of Children, Youth and Families*, 10 F.Supp.3d 671, 690 (E.D.Pa. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 66-67 (2011)).  Given Plaintiff's factual allegations, we agree with Plaintiff that it is indeed patently obvious that if the County's employees seize and hold an individual for nearly an entire month without access to a hearing or other legal recourse, a constitutional injury to that individual is a predictable outcome of that event.  Further, Plaintiff supports his failure to train theory by alleging that Defendants had "prior notice of the propensities of their employees to engage in this type of behavior, but took no steps to train them . . . ."  (Doc. 1, ¶ 31).  Though this statement is admittedly vague, and lacks reference to specific prior instances that would demonstrate Defendants' supposed "prior notice," it is nonetheless sufficient at this early stage to make out a claim under § 1983.  Finally, Plaintiff also alleges, as he must, that the alleged shortcomings of Defendants "caused" the individual officers to violate his rights, as well as the rights of other unnamed probationers.  (Doc. 1, ¶¶ 49-51).

Assuming these assertions to be true, as we must when considering a Motion to Dismiss, we find that Plaintiff has made out sufficient facts to establish a *Monell* claim.  While we render no judgment on whether the claim will survive later phases of litigation, we shall deny Defendants' Motion to Dismiss at this early stage.

We turn now to those arguments posed by the West Shore Regional Defendants. The West Shore Regional Defendants argue: (1) that Plaintiff failed to show that the actions of the West Shore Regional Police Department and Officer Rine were unreasonable under the circumstances; (2) that Plaintiff did not plead sufficient facts to sustain the *Monell* claims against the West Shore Regional Defendants; (3) that Officer Rine enjoys qualified immunity; and (4) that, because there is no private cause of action for damages under the Pennsylvania Constitution, the state constitutional claims must be dismissed.[1]

At the outset, we note that the West Shore Regional Defendants are only involved in the allegations as premised in the Complaint to the extent that their police officers engaged in a search of the Plaintiff's car and then assisted in his arrest. According to the Complaint, the West Shore Regional Defendants then had no further contact with Plaintiff, as Plaintiff was subsequently incarcerated in the Cumberland County Jail and interacted only with employees of Cumberland County after that time.

The West Shore Regional Defendants argue that this minimal exposure to Plaintiff did not give rise to actions that were unreasonable under the

---

[1]     In regards to the West Shore Regional Defendants' argument concerning the Pennsylvania Constitution, we refer to our analysis conducted above in regards to the Cumberland County Defendants' identical argument. We reach the same conclusion here. Because *Jones v. City of Phila.*, 890 A.2d 1188 (Pa. Cmmw.Ct. 2006) allows for alternative remedies under the law beyond relief through monetary damages, and because Plaintiff here seeks those remedies, we shall not dispose of his state law constitutional claims at this time.

circumstances.  Frustratingly, Plaintiff cites to almost no case law in his brief in opposition to this argument.  The Court finds this poor briefing to be particularly egregious because of the existence of the Third Circuit case, *Berg v. County of Allegheny*, 219 F.3d 261 (3d Cir. 2000), which we find to be specifically appurtenant to the instant factual scenario.  In *Berg*, Plaintiff Raymond A. Berg was arrested for a probation violation on the basis of an erroneously issued warrant that was in fact meant for one Paul Banks.  Despite a number of discrepancies that may or may not have been sufficient to alert the municipality to the error, Berg was taken into custody.  The Third Circuit determined that "there is no doubt that Berg's arrest constituted a seizure for Fourth Amendment purposes.  Even if [the constable] had thought he was arresting Banks, his intentional application of control over the person of Berg would have been a Fourth Amendment seizure." *Berg*, 219 F.3d at 269.

Here too, the search of Plaintiff's belongings and his subsequent arrest constituted a Fourth Amendment search and seizure, despite the fact that Officer Rine and others were "just" following the orders of Plaintiff's probation officer, Officer Rhinehart.  Plaintiff alleges that Officer Rhinehart's orders were premised upon a "demonstrably false" anonymous tip alerting the Cumberland County Adult Probation and Parole Department of Plaintiff's supposed probation violation.  The question thus becomes whether the facts surrounding the search and seizure of

Plaintiff undertaken by Officer Rine, taken in the light most favorable to the Plaintiff, could constitute a violation of the Fourth Amendment.  Because of the liberal pleading standard afforded to Plaintiff on a Motion to Dismiss, we conclude that it can.

We first emphasize that the Supreme Court has determined that the legal standard for reasonable searches and seizures of probationers is significantly lower than that applied to the general public.  "[P]robationers . . . do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on the observance of special [probation] restrictions.'"  *Griffin v. Wisconsin*, 483 U.S. 868, 874-75, 107 S.Ct. 3164, 3169 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600 (1972)).  Indeed, in *Griffin*, the Supreme Court specifically found that

> [i]n some cases—especially those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. . . .  To allow adequate play for such factors, we think it reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search.

*Griffin*, 483 U.S. at 879-80 (holding that a search of the plaintiff's residence was "reasonable" within the meaning of the Fourth Amendment where an informant provided information to the Beloit Police Department that there "were or might be guns" in the plaintiff's apartment).

18

In Pennsylvania, "for a search to be reasonable, it must be based upon the probation or parole officer's reasonable belief that the search is necessary to the performance of his duties." *Jarvis El v. Pandolfo*, 701 F.Supp. 98, 102 (E.D.Pa. 1988) (citing *Griffin*, 107 S.Ct. at 3168; *U.S. v. Duff*, 831 F.2d 176, 179 (9th Cir. 1987)).  Here, the search conducted by Officer Rine and the West Shore Regional Police Department was performed on the instruction of Plaintiff's probation officer, Officer Rhinehart.  Plaintiff alleges that both the seizure of the Plaintiff's person and the search of Plaintiff's car were unreasonable because "[t]he arrest and incarceration of Plaintiff . . . was [sic] based on a demonstrably false, anonymous report that did not rise to the legal standard required for the arrest of a probationer."  (Doc. 1, ¶ 36).

No other information about the substance of the tip or its reliability has been provided to the Court at this early stage of the litigation.  Though the Complaint is admittedly vague and unclear about why the anonymous tip was "demonstrably" false, we take this allegation as true.  Without further information about what Officer Rhinehart knew regarding the tip, or what information was communicated to Officer Rine and the other officers of the West Shore Regional Police Department, we are unable to infer that they acted reasonably, particularly given that once Plaintiff's vehicle was searched and no contraband was revealed, they nonetheless proceeded to take Plaintiff into custody.  In making this determination,

we emphasize the Third Circuit holding in *Berg* that "an erroneously issued arrest warrant cannot provide probable cause for arrest." *Berg*, 219 F.3d at 269-70 (citing *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031 (1971)).[2]  This conclusion indicates to us that so too here, dependence upon the potential error of another branch of the police department, here the probation and parole department, should not automatically absolve officers who effectuated Plaintiff's arrest without further inquiry into the circumstances of that arrest.

As with Plaintiff's *Monell* claims related to the Cumberland County Defendants as discussed above, we make no pre-judgment concerning whether Plaintiff's claims against the West Shore Regional Defendants will survive in later stages of litigation.  However, at this early time and in an abundance of caution, we shall agree with Plaintiff, and we refuse to dismiss them here.

The West Shore Regional Defendants also argue that Officer Rine is entitled to qualified immunity for his actions involving Plaintiff.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012).  "To be clearly established, a right must be sufficiently clear that every reasonable

---

[2]  "Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.  Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley*, 401 U.S. at 568.

official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (citing *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2085 (2011)).  When deciding whether a right is clearly established, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.  Qualified immunity, when properly applied, is meant to "protect[] all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal citations omitted).

While it is true that qualified immunity should be resolved at the earliest possible stage of litigation, *see Hunter v. Bryant*, 502 U.S. 224, 227 (1991), at the motion to dismiss stage, "qualified immunity will be found only when the immunity is established on the face of the complaint." *Schor v. North Braddock Borough*, 801 F.Supp.2d 369, 378-79 (W.D.Pa. 2011) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)).  Thus, only where a plaintiff "fails to state a claim of a violation of a clearly established law, [is] a defendant pleading qualified immunity . . . entitled to dismissal before the commencement of discovery." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

As noted above Plaintiff has alleged that the officers participated in an unreasonable search and seizure of his person based on inaccurate information. The right to be free from unreasonable searches and seizures is right clearly

established by law that any reasonable officer would understand to be in effect at the time of Plaintiff's arrest.  Given this understanding, and accepting Plaintiff's allegation that the tip was false, and demonstrably so, we cannot find that the officers are entitled to qualified immunity on the face of the Complaint alone. Certainly, if evidence later indicates that no reasonable officer could have been aware that the search and arrest the officers here conducted was premised on an unreliable tip, or that Officer Rhinehart otherwise lacked the "reasonable belief" necessary to order the search,[3] then qualified immunity shall be applicable.

As with the Cumberland County Defendants' arguments, we turn at last to the West Shore Regional Defendants' arguments regarding Plaintiff's *Monell* claims.  We do not repeat the standard for such claims here but rather refer back to the standard already set forth above.

Defendants argue that Plaintiff has failed to set forth facts that would indicate that the West Shore Regional Defendants engaged in a violation of Plaintiff's Fourteenth Amendment rights.  (Doc. 21, pp. 18-20 ("Plaintiff further fails to allege what actions were taken by the Police Defendants which allegedly resulted in a violation of Plaintiff's right to due process of law or the right to free

---

[3]     Indeed, evidence may not only come to show that the West Shore Defendants lacked knowledge of any wrongdoing in the lead-up to Plaintiff's arrest, but that no wrongdoing in fact occurred.  We take the facts alleged by Plaintiff as true only at this early stage, and emphasize that we do not pre-judge this matter, making no inference regarding whether Officer Rhinehart indeed possessed the reasonable belief of a probation violation necessary to direct Plaintiff's search and arrest.

and open access to courts, a fair hearing, or a forum in which to seek redress of his

grievances.")).  Plaintiff argues that the West Shore Regional Defendants engaged

in "multiple incidents which, taken together, show a practice of violating

probationers' constitutional rights."  (Doc. 27, pp. 6-8).[4]  Specifically, Plaintiff

explains that

> officers of the Department, on the basis of inadequate information: entered
> Plaintiff's place of employment; approached Plaintiff, and in front of the
> Plaintiff's coworkers and customers, detained Plaintiff' forcibly removed
> Plaintiff from his place of employment to the parking lot where his vehicle
> was located; handcuffed Plaintiff; searched Plaintiff's car after being denied
> permission to search it; placed Plaintiff in a police vehicle; and transported
> Plaintiff to jail.

(Doc. 27, p. 7).

We concur with Defendants that *not a single one* of these actions implicate

Plaintiff's Fourteenth Amendment rights to due process, as described in Count III

of Plaintiff's Complaint.  Rather, all pertain to Plaintiff's Fourth Amendment right

to be free from unreasonable search and seizures.  Indeed, this right and

Defendants' alleged violation of it are appropriately covered by Plaintiff's claims

in Count I of the Complaint, alleging a § 1983 violation on the basis of a Fourth

Amendment deprivation.[5]  In comparison, Count III reiterates certain claims made

---

[4]   By "incidents," we believe that Plaintiff meant actions, as only the single incident in
which Plaintiff was searched and arrested by the West Shore Regional Police officers is
referenced in the Complaint, though Plaintiff went on to describe multiple actions taken by
Defendant officers during the course of that singular incident.

[5]   "The Supreme Court has held that when government behavior is governed by a specific
constitutional amendment, due process analysis is inappropriate.  Although not all actions by

in Count I, but also alleges violations "to due process of law, including [probationers'] rights to free and open access to the courts, a fair hearing, and a forum in which to seek redress of their grievances." (Doc. 1, ¶ 48).

As Plantiff alleges in his Complaint, Plaintiff was exclusively in the care of Cumberland County Defendants after transported to Cumberland County Jail. Indeed, after that point Plaintiff alleges no further interaction whatsoever with the West Shore Regional Defendants. There are thus no facts in Plaintiff's Complaint that support Plaintiff's claims of Fourteenth Amendment violations on the part of those Defendants. Plaintiff's Fourteenth Amendment claims are therefore unsupported, and we shall dismiss them as they pertain to the West Shore Regional Defendants. However, Plaintiff's Count III claims are dismissed without prejudice and with leave to amend the Complaint should further facts reveal that the West Shore Defendants in fact had some involvement in Plaintiff's detention and alleged deprivation of due process subsequent to his arrest. We further note that insomuch as Plaintiff asserts Fourth Amendment violations against those Defendants, those claims are preserved in Count I of the Complaint.

## V.    CONCLUSION

---

police officers are governed by the Fourth Amendment, the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." *Berg*, 219 F.3d at 269-70 (citing *County of Sacramento, et al. v. Lewis*, 523 U.S. 833, 842-43(1998)). Plaintiff's allegations of unreasonable search and seizure are thus appropriately brought under Fourth Amendment analysis.

For the reasons set forth above, we shall grant in part and deny in part the Defendants' Motions to Dismiss.  To the extent the West Shore Regional Defendants' Motion seeks to preclude Plaintiff's Fourteenth Amendment claims against the West Shore Regional Defendants, it is granted.  However, Plaintiff claims in this regard are dismissed without prejudice, and with leave to amend should the needs of justice so dictate.  While we confess a degree of skepticism regarding the durability of Plaintiffs' remaining claims, Defendants' Motion to Dismiss in their regard is denied and those issues are best left for another day.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.  The Cumberland County Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 15) is **DENIED** in accordance with the above-issued memorandum.

2.  The West Shore Regional Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 18) is **GRANTED** in part and **DENIED** in part in accordance with the above-issued memorandum.


                                         s/ John E. Jones III
                                        John E. Jones III
                                        United States District Judge